IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 14-00292-01-CR-W-FJG |
| RODNEY J. TATUM, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
TO ACCEPT DEFENDANT'S GUILTY PLEA**

On October 27, 2014, I held a change-of-plea hearing after this case was referred to me by United States District Judge Fernando Gaitan, Jr. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

## I. BACKGROUND

On October 27, 2014, defendant waived indictment and an information was filed charging defendant with one count of mail fraud, in violation of 18 U.S.C. § 1341.

Judge Gaitan referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. On October 27, 2014, defendant appeared before me with his counsel, Robert Young. The government was represented by Assistant United States Attorney Daniel Nelson. The proceedings were recorded and a transcript of the hearing was filed on October 28, 2014.

## II. AUTHORITY OF THE COURT

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of de novo review by a district judge preserves the structural guarantees of Article III. United States v. Torres, 258 F.3d at 795. Applying the Peretz holding and the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing United States v. Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting United States v. Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea

2

proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. On October 27, 2014, an information was filed charging defendant with mail fraud, in violation of 18 U.S.C. § 1314, and one forfeiture allegation pursuant to 18 U.S.C. §§ 981(a)(1)(D), 982(a)(4), and 1341, and 28 U.S.C. § 2461(c) (Tr. at 5-8). Defendant understood the charges in the information (Tr. at 5, 8).

2. The statutory penalty for mail fraud is not more than 20 years in prison, not more than $250,000 fine, not more than three years supervised release, and a $100 special assessment (Tr. at 8). The forfeiture count involves an amount in excess of $313,000 (Tr. at 8) Defendant understood the statutory penalties (Tr. at 8).

3. Defendant was advised of and understood the following:

    a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 9);

    b. That he has the right to assistance of counsel throughout the trial (Tr. at 9);

    c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 9-10);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 10);

e. That defendant would have an opportunity to subpoena witnesses to testify on his behalf (Tr. at 11);

f. That defendant would have an opportunity to testify on his own behalf, but that he would not be required to and the jury would be instructed that they could not draw an adverse inference if he chose not to testify (Tr. at 10); and

g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 11).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 12).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 12). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 12). Defendant stated that he understood (Tr. at 12).

6. Defense counsel has had access to the government's evidence and agreed that his review of the evidence and his independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 13-14).

7. The government made the following factual basis for the crime to which defendant intends to plead guilty:

> [I]f the United States were to present evidence, we would present that from approximately 1991 Mr. Tatum was employed by Clarkson Construction. In approximately 2003 he became the IT officer for the company in which he had a great deal of discretion. He was given a Commerce VISA credit card that drew on the company and essentially the conduct in this case is from approximately 2013 until mid-summer, that is, early August 2014, Mr. Tatum, without the knowledge of or authorization by Clarkson Construction, used the Commerce Card to order high-end expensive computer and communications equipment, including a large number of approximately 500 solid state hard drives that are very expensive hard drives. And Mr. Tatum then took that merchandise, took it from his employer and sold it through personal accounts online and had the money credited to his PayPal account, which then

4

credited back to his Bank of America account, and which he then spent for his own enrichment. Mr. Tatum was confronted at his home one morning, the same morning, in fact, that the criminal complaint was issued in this case and a search warrant was executed. And since that point Mr. Tatum, through his counsel, has been in discussions with the Government about coming to a resolution, which has included that Mr. Tatum has already begun making provisions to provide restitution back to Clarkson Construction. The nature of the charge that he's pleading guilty to is one of the specific items that was sent through Federal Express, which is a private interstate carrier, from Tennessee to the Western District of Missouri, from July 31st, 2014 to August 1st, 2014, the value of which was over $2,000, which was electronic computer equipment that Mr. Tatum then, the Government's evidence would be, intended to sell for personal profit. Mr. Tatum was bound by regulations at his employer that he was not use this Commerce VISA card for anything other than official business expenses. And the Government's evidence would be through witnesses from Clarkson who would testify that they had no need for these solid state hard drives. And when an audit was conducted, in fact, the 306,000 plus of electronic communications and computer equipment was not in the inventory of Clarkson Construction and that it had, in fact, been taken by Mr. Tatum. There would also be specific evidence regarding a subpoena returns from online and financial institutions showing the flow of the orders and the money from Clarkson Construction to obtain the goods and then through the sale of the goods online back to Mr. Tatum's Bank of America account, and then, in fact, that that money then was used to purchase personal items by Mr. Tatum for his own enjoyment and again, without the authorization of his employer, Clarkson Construction.

(Tr. at 14-16).

8.     Defendant was placed under oath (Tr. at 16) and admitted the following: Between 1991 and September 9, 2014, he was employed by Clarkson Construction Company in Kansas City, Missouri, and he lived at 8921 NE 91st Terrace, Kansas City, Missouri. He was Director of IT for Clarkson and was given a Commerce VISA credit card which he used to purchase items for his own personal use and not for the purpose of the business associated with Clarkson Construction. Between October 22, 2013, and September 9, 2014, he ordered more than $300,000 worth of computer equipment and cellular phones. During that time while in the Western District of Missouri, he caused to be sent in interstate commerce by Federal Express electronic equipment worth $2,655.41 from Memphis, Tennessee, to Kansas City, Missouri. This was done not in connection with Clarkson's business but as part of defendant's scheme to defraud Clarkson. He did it knowingly and voluntarily. Defendant defrauded Clarkson out of $269,706.23, which is the amount shown on his PayPal account.

5

The government has charged him with defrauding Clarkson out of $306,540.34. The parties have agreed to review additional invoices regarding the total amount. The government believes the loss amount is the amount Clarkson paid for the items. Defendant believes the loss amount is the amount he received through PayPal by selling the items he purchased with Clarkson's credit card. The government pointed out that PayPal charges a percentage of the transaction, so defendant would not have received the full amount for the sale of the items, but Clarkson did have to pay the full amount when defendant ordered those items with Clarkson's credit card. After some discussion about the amount, defendant agreed that the loss was at least $306,540.34. The forfeiture count includes that $306,504.34 as well as a small amount related to Stedman Motor Sports in Moulton, Alabama, which is relevant conduct peripherally connected to Clarkson. Defendant had taken a motorcycle to Stedman Motor Sports where $6,567.40 worth of work was performed and then defendant cancelled the services. That transaction is what led to the discovery of the fraudulent scheme against Clarkson. The parties have not specifically agreed on the final amount of restitution but have agreed to resolve that. (Tr. at 16-27).

9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 27). In addition, I went over the entire plea agreement with defendant during the change-of-plea hearing (Tr. at 27-33).

10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 33).

11. Defendant is satisfied with the advice and guidance he has received from Mr. Young (Tr. at 33-34). There is nothing he has done that defendant did not want him to do (Tr. at 34). There is nothing he has failed to do that defendant wanted him to do (Tr. at 34).

12. Defendant is 42 years of age (Tr. at 34). He has a high school education and some college (Tr. at 34). Defendant has no mental health or substance abuse issues that would impair his ability to make an informed decision (Tr. at 34-36). Defendant was not under the influence of any drug or alcohol during the change-of-plea hearing other than his prescribed medication (Tr. at 34-36).

13. Defendant tendered a plea of guilty to count one and the forfeiture allegation in the information (Tr. at 36-37).

## IV. ELEMENTS OF THE CHARGED OFFENSES

The essential elements of mail fraud are: (1) defendant voluntarily and intentionally devised or made up a scheme to defraud another out of money, (2) defendant did so with the intent to defraud, and (3) defendant used, or caused to be used, the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme. Eighth Circuit Model Jury Instruction 6.18.1341.

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in count one and the forfeiture allegation of the information.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting defendant's guilty plea and adjudging defendant guilty of the offenses charged in the information.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 30, 2014

8